UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID G.,[1]

          Plaintiff,     Case # 19-CV-895-FPG

v.                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

## INTRODUCTION

On December 19, 2014, Plaintiff David G. protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act"). Tr.[2] 85-87. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge William M. Weir on May 24, 2017. Tr. 38-84. At the hearing, Plaintiff, vocational expert Jay Steinbrenner (the "VE"), and Plaintiff's case worker, Katherine Lee Smith (the "Case Worker"), testified. Tr. *Id.* On September 27, 2017, the ALJ issued an unfavorable decision. Tr. 12-29. The Appeals Council denied Plaintiff's request for review on May 7, 2019, making the ALJ's decision the final decision of the SSA. Tr. 1-6.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 11. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter.  ECF No. 4.

**LEGAL STANDARD**

## I.    District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## II.    Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

2

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step

one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2014,

the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe

impairments: "status post boxer's fracture of the right hand; a depressive disorder, NOS, and a

substance abuse disorder." Tr. 18. The ALJ also found that Plaintiff has the following non-severe

impairments: "acid reflux disease, pancreatitis, and status-post stomach surgery." Tr. 18. At step

three, the ALJ found that these impairments, alone or in combination, did not meet or medically

equal any Listings impairment. Tr. 18-20.

Next, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at

all exertional levels with additional restrictions. Tr. 20. Specifically, as relevant here, the ALJ

found that Plaintiff is limited to having only occasional contact with coworkers and supervisors

and incidental contact with the public; and performing simple, repetitive one or two-step tasks,

and no complex tasks, defined as multiple simultaneous goals or objectives or the need to set

quality, quantity, or method standards independently. Tr. 20.

At step four, the ALJ found that Plaintiff is able to perform his past relevant work as a food

preparer. Tr. 24. Despite this step four finding, the ALJ proceeded to step five. At step five, the

ALJ relied on the VE's testimony and found that Plaintiff can adjust to other work that exists in

significant numbers in the national economy given his RFC, age, education, and work experience.

Tr. 25-26. Specifically, the VE testified that Plaintiff could work as a kitchen porter or warehouse

worker. Tr. 26. Accordingly, the ALJ concluded that Plaintiff was not "disabled" under the Act.

Tr. 26.

## II.     Analysis

Plaintiff argues that remand is required because the Commissioner failed to make an adequate effort to develop the record and therefore issued a decision on an incomplete record.  ECF No. 9-1 at 14-21; ECF No. 12 at 1-5. More specifically, Plaintiff argues that the Commissioner failed to develop the record as it pertains to Plaintiff's clinical psychiatric notes.[3] *Id.*

The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his application unless it is necessary to develop an earlier period. 20 C.F.R. §§ 404.1512(b), 416.912(b). The ALJ must "make every reasonable effort" to help the claimant get reports from his medical sources. *Id.* Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence.  *Rosa*, 168 F.3d at 79 n.5.

"The obligation to develop the record is enhanced when the disability in question is a psychiatric impairment." *Marinez v. Commissioner*, 269 F. Supp. 3d 207, 215 (S.D.N.Y. 2017) (citation and internal quotation marks omitted). "This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Id.*

In his written determination, the ALJ found that Plaintiff had the severe impairment of a depressive disorder. Tr. 18. The written determination also discusses Plaintiff's treatment for

---

[3] Plaintiff advances other arguments that he believes warrant reversal of the Commissioner's decision. ECF No. 9-1 at 19-21. However, the Court will not address those arguments because it disposes of this matter based on the failure to develop the mental health record.

depression, which included psychotherapy at Lakeshore Behavioral Health ("Lakeshore"). Tr. 22. Plaintiff began treatment at Lakeshore in October 2014. Tr. 309. A review of the medical records from Lakeshore reveals diagnoses of (1) recurrent major depressive disorder; (2) posttraumatic stress disorder; (3) cannabis, nicotine, alcohol, and cocaine dependence; and (4) antisocial personality. Tr. 309. Plaintiff enrolled in Lakeshore's Personalized Recovery Oriented Services ("PROS") program in September 2015. Tr. 326.

At the May 24, 2017 hearing, the ALJ questioned Plaintiff about the four medications he was prescribed through Lakeshore. Tr. 55. Plaintiff indicated that while the medications improved his condition to some degree, he still suffered with persistent symptoms of depression, including "mood swings and I don't feel like doing anything. The pain makes me feel like I sleep a lot. I stay home and block everything out to tell you the truth." Tr. 55. Plaintiff's Case Worker stated that he attended the PROS program five days per week—Monday through Friday. Tr. 74. She also stated that Plaintiff had been reduced to three days per week after going for five days initially, however, "something happened" to him in 2015 and then "he needed to go back to PROS five days." Tr. 74-75. The Case Worker also indicated that Plaintiff had been attending PROS at Lakeshore five days per week from some time in 2015 through the date of the hearing in May 2017. Tr. 69, 74-75. At the outset of the May 24, 2017 hearing, Plaintiff's counsel noted a concern that Lakeshore "did not comply with sending clinic notes or psychiatric notes." Tr. 41. Plaintiff's counsel also indicated the possibility of recontacting Lakeshore. Tr. 41.

Plaintiff argues that the ALJ failed to obtain notes from Lakeshore "[d]espite Plaintiff's lengthy clinical involvement" with the facility, and despite counsel's "expressed concern" over the lack of records and "diligent requests" to obtain them. ECF No. 9-1 at 14-15. In response, the Commissioner argues that "[t]he Court is under no obligation to remand based on a mere

'theoretical possibility' there is additional evidence in light of Plaintiff's own failure to produce anything relevant in the intervening time." ECF No. 11-1 at 17. In reply, Plaintiff argues that the missing clinical records are not "theoretical" since testimony at the hearing "clearly established Plaintiff attended treatment five days a week and received medication." ECF No. 12 at 5.

As explained above, "[t]he ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016). Here, the ALJ did not make every reasonable effort to assist Plaintiff in obtaining records from Lakeshore. The record is clear that Plaintiff received ongoing services at Lakeshore, through the PROS program, to treat symptoms of his major depressive disorder and substance abuse beginning sometime in 2015 and continuing five days per week through at least May 2017. Tr. 41, 69, 74-75. In other words, over one years' worth of counseling and psychiatric notes are missing from the record, and Plaintiff's counsel explicitly raised the issue of these missing notes with the ALJ at the hearing. Tr. 40-41. Plaintiff received services at Lakeshore that included prescriptions for four medications to treat his major depressive disorder and substance abuse—impairments the ALJ deemed "serious" under the Act. *See* Tr. 18, 55.

Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5. Here, remand is necessary. As described above, there is a significant gap in the mental health treatment records from Lakeshore. *See Will, o/b/o C.M.K. v. Commissioner*, 366 F. Supp. 3d 419, 425 (W.D.N.Y. 2019) ("In other words, the record is missing treatment notes documenting over one years' worth of mental health evaluations, including the decision to prescribe [plaintiff]

medications for his serious impairment. These records likely contained information relevant to the ALJ's evaluation of [plaintiff's] alleged disability."). Instead of fulfilling his affirmative duty to develop Plaintiff's complete medical history, the ALJ determined the RFC without treatment notes from Lakeshore. The records that the ALJ considered contained opinions from psychological consultative examiner Dr. Susan Santarpia, M.D, which were rendered in 2012 and 2015. *See* Tr. 24. The ALJ gave partial weight to those opinions. Tr. 24. Santarpia opined that Plaintiff "could deal appropriately with stress, maintain a regular work schedule, and maintain attention and concentration on . . . simple tasks." Tr. 24. In addition to Santarpia's opinion, the ALJ considered, and ultimately afforded little weight to, the opinion of State agency mental health consultant Dr. M. Marks, M.D. Tr. 23-24. Dr. Marks's opinion was based on medical records through May 2015. Tr. 24.

Although the record contained opinions from Santarpia and Marks, these opinions were rendered in 2012 and 2015 and did not account for Plaintiff's deteriorating condition and his need to resume attending the PROS program five days per week in 2015 through the date of the hearing in May 2017. Therefore, the opinions are stale, do not amount to substantial evidence, and the ALJ was not in a position to render an RFC without the treatment notes from Lakeshore. *See Griffith v. Astrue*, No. 08–CV–6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. July 27, 2009).

Accordingly, for the reasons stated above and in light of the ALJ's broad duty to develop the record, the Court finds that remand is required. *See, e.g., Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). Where, as here, "there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." *Glast v. Astrue*, No. 11-CV-5814 SLT, 2013 WL

5532696, at *10 (E.D.N.Y. Sept. 30, 2013) (citation omitted). On remand, the ALJ is directed to exercise his duty to develop the record to ensure that it is complete, including working to obtain any missing treatment records from Lakeshore.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 11, is DENIED and Plaintiff's Motion for Judgment on the Pleadings, ECF No. 9, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 4, 2021
      Rochester, New York

                                    HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                      United States District Court